1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  CHERYL ADAMS, State Bar #164194
   Chief Trial Deputy
3  MARGARET W. BAUMGARTNER, State Bar #151762
   Deputy City Attorney
4  RENÉE E. ROSENBLIT, State Bar #304983
   Fox Plaza
5  1390 Market Street, 6th Floor
   San Francisco, California 94102-5408
6  Telephone:      (415) 554-3859 [Baumgartner]
   Telephone:      (415) 554-3853 [Rosenblit]
7  Facsimile:      (415) 554-3837
   E-Mail:         margaret.baumgartner@sfcityatty.org
8  E-Mail:         renee.rosenblit@sfcityatty.org

9
   Attorneys for Defendants,
10 CITY AND COUNTY OF SAN FRANCISCO, et al.

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14 TIFFANY CROSS et al.,                  Case No. 3:18-cv-06097 EMC

15        Plaintiffs,                     **DEFENDANTS' REPLY MEMORANDUM OF
                                          POINTS AND AUTHORITIES IN SUPPORT
16        vs.                             OF DEFENDANT'S MOTION TO DISMISS
                                          SECOND AMENDED COMPLAINT**
17 CITY AND COUNTY OF SAN
   FRANCISCO, et al.,                     Hearing Date:     August 8, 2019
18                                        Time:             1:30 p.m.
          Defendants.                     Place:            Courtroom 5, 17th Floor
19                                                          450 Golden Gate Ave., SF

20                                        Trial Date:       Not set.

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................3

INTRODUCTION AND STATEMENT OF FACTS ..................................4

ARGUMENT .........................................................................................5

    I.      Plaintiffs' Allegations that San Francisco Police Officers' Participation in Some of the "Operation Safe Schools" Investigations Fails to Raise an Inference of Purposeful Racial Discrimination Against Plaintiffs Here .....................5

          A.     Plaintiffs' Alleged Facts Do Not Raise a Probable Inference of Race Discrimination..............................................................5

          B.     Plaintiffs Reliance on Group Statistics Does Not Support Individual Liability..............................................................8

    II.     Plaintiff's Allegations that Officer Crosby Used Inappropriate Sexual Language and that Officers Scafani and Goff "Mocked and Trivialized" the Black Lives Matter Movement Does Not Raise an Inference that they Caused the Federal Government to Prosecute Plaintiffs Based on Their Race .....................10

CONCLUSION.......................................................................................11

## **<u>TABLE OF AUTHORITIES</u>**

**Federal Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662, 682 (2009)..................................................................6, 7, 8

*Austin v. University of Oregon*
    925 F.3d 1133 (9th Cir. 2019) ...........................................................6

*Ayers v. Belmontes*
    549 U.S. 7 (2006)...............................................................................9

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 570 (2007)...................................................................5

*Belmontes v. Brown*
    414 F.3d 1094 (9th Cir. 2005) ...........................................................9

*Federal Deposit Ins. Corp. v. Henderson*
    940 F.2d 465 (9th Cir. 1991) .............................................................5

*Giron v. City of Alexander*
    2009 WL 2998946 (E.D. Ark. Sept. 11, 2009) ..................................9

*Lam v. University of Hawaii*
    40 F.3d 1551 (9th Cir. 1994) .............................................................10

*Ramos v. Nielson*
    321 F.Supp.3d 1083 (N.D. Cal. 2018) ...............................................10

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Security*
    298 F.Supp.3d 1304, 1314 (N.D. Cal. 2018) .....................................10

*United States v. Bass*
    536 U.S. 862 (2002)...........................................................................9

*United States v. Mumphrey*
    193 F.Supp. 3d 1040 (N.D. Cal. 2016) ..............................................9

### INTRODUCTION AND STATEMENT OF FACTS

The San Francisco Police Department assigned various San Francisco Police Officers, including the 10 individual police officer defendants here, to assist the federal government in investigating certain categories of drug dealers in the Tenderloin.  Because the assigned officers knew that the federal government would prosecute only a subset of drug dealers, during the hours they used federal resources, the officers focused their efforts on those that they believed the federal government would be willing to prosecute.  (Second Amended Complaint ("SAC") ¶¶ 3, 92, 104.)  Plaintiffs are seven of the 23 suspects that the San Francisco Police Department investigated using federal resources in 2014.  (SAC ¶ 106.)  The 10 officer defendants had some involvement in either the investigation, arrest, or both, of the seven plaintiffs.  (SAC ¶ 48-73.)  Five of the 10 officers also participated in investigating 14 other drug dealers in 2013 for the federal government, all of whom pled guilty.  (SAC ¶¶ 4, 103.)

The 37 federal investigations formed only a small part of the officers' drug arrests.  During their other work hours these same officers investigated and arrested hundreds of drug dealers of all races.  (SAC ¶ 87.)The only difference in the hundreds of non-federal investigations is that the officers completed a San Francisco Police Incident Report and referred the case to the District Attorney, whereas during the investigations using federal resources, the officers provided the evidence to the federal government, who then decided who to prosecute.

Plaintiffs have sued the City, a number of supervising San Francisco Police Officers, and 10 individual officer defendants claiming race discrimination.  Based on the fact that of the 37 drug dealers prosecuted by the federal government were all Black, and that the 10 defendants participated in multiple investigations, plaintiffs assert that racial animus motivated the officers.

Defendants moved to dismiss the First Amended Complaint on the grounds that plaintiffs plead insufficient facts to support an inference of purposeful racial discrimination by each of the 10 individual officers.  The court granted the motion with leave to amend.  In their Second Amended Complaint, plaintiffs added as facts for seven of the defendants only that they were "involved" in between 13 and 25 of the investigations that led to the 37 federal prosecutions.  Plaintiffs also added that two of the officers "trivialized" the Black Lives Matter movement to an unknown group of

teenagers, and that two of the officers in unknown circumstances at unknown times used sexually vulgar language.

Because these additional facts still fail to raise an inference that defendants arrested plaintiffs because of their race, the 10 individual defendants moved to dismiss.  Plaintiffs oppose the motion, relying in large part on the Court's order regarding discovery in the underlying criminal case, and arguing that the statistical results created by the group of officers must mean that the officers acted with animus.  They also argue that discrimination is discrimination, and that if an officer holds an animus towards one protected group, the officers must also have animus towards another.

Plaintiffs' arguments fail.  Plaintiffs cannot use the acts of one officer to create constitutional liability for other individual officers.  Defendants have liability only for their own acts.  Here, Plaintiffs do not even allege what decisions or actions each individual took with regard to plaintiffs, much less to the 37 other prosecutions on which plaintiffs rely to infer animus.  And, no authority supports the argument that two instances of sexually derogatory language raises a reasonable inference of general racial animus.  Plaintiffs must allege sufficient facts to make it probable, rather than possible, that each officer individually acted out of racial animus.  Because plaintiffs have not, and cannot, allege facts raising an inference that the officers acted because of, rather than in spite of, plaintiffs' race, plaintiffs have not stated a claim against these officers, and the Court should dismiss the Second Amended Complaint.

## ARGUMENT

### I.   Plaintiffs' Allegations that San Francisco Police Officers' Participation in Some of the "Operation Safe Schools" Investigations Fails to Raise an Inference of Purposeful Racial Discrimination Against Plaintiffs Here

#### A.   Plaintiffs' Alleged Facts Do Not Raise a Probable Inference of Race Discrimination

To state an equal protection claim, plaintiffs must allege facts showing that the officers acted in a discriminatory manner and with a discriminatory purpose, which resulted in a discriminatory effect. *Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d 465, 471 (9th Cir. 1991); *McCleskey v. Kemp,* 481 U.S. 279 (1987).  The facts must support an inference making such an allegation probable, not just possible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, plaintiffs allege that the 10 individual defendant officers participated in some, but not all, of the investigations that led to 37 federal prosecutions.  An individual officer's participation in some part of the numerous different operations, occurring across two years, cannot make each officer responsible for plaintiffs' alleged harm.  Each defendant is liable only for his or her own individual acts.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (supervisors not responsible for racial discrimination of subordinates even when they are aware of the discrimination).  Finding that vague "participation" in some, but not all, of these investigations or arrests results in individual liability based on all of them runs contrary to the fundamental requirement of individual responsibility.

Each of the 37 investigations plaintiffs rely on to support their claim that the 10 defendant officers intentionally arrested the seven plaintiffs here because of, rather than in spite of, their race, required calculated decisions to find repeat drug offenders who were locatable, identifiable, and who the ASAO would prosecute.  Plaintiffs' complaint concludes that other persons of other races were "similarly situated."  Plaintiffs fail to allege facts showing that they were similarly situated in a way that mattered:  that those other drug dealers met federal prosecutorial criteria, and were present during the periods of time that the officers investigated in conjunction with the federal government.  It would be irrational for these officers to spend the few hours during which they worked with the federal agents to investigate persons who did not meet those criteria.  In other words, no facts support the conclusion that the officers made affirmative choices based on race.  *See Austin v. University of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) (affirming dismissal of equal protection claim based on allegations that University disciplined only male athletes for sexual misconduct because of lack of parallelism with comparative females athletes).

Plaintiffs argue as irrelevant the officers' probable cause based on plaintiffs' unlawful drug sales.  Defendants never asserted that probable cause alone prevents equal protection liability.  But the obvious explanation for the officers' investigations of plaintiffs on the days in question is that plaintiffs had criminal histories meeting the federal criteria, and on the days of the operation sold drugs to undercover officers on street corners that could easily be videotaped.  This obvious alternative explanation undercuts an inference that the suspect's race motivated these officers.  As the Court

found in affirming the dismissal of a selective enforcement claim in *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), the lawfulness of an arrest can undermine an inference of discrimination:

> It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims.  On the facts respondent alleges the arrests Mueller oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts.  As between that 'obvious alternative explanation' for the arrests and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.

> (Emphasis added.)

Plaintiffs also argue that their allegation that the defendant officers also investigated drug dealers of other races has no effect on the inference of race discrimination.  But plaintiffs admit that the officers "targeted" and surveilled all races.  In other words, to that respect, the officers did not discriminate.  The only difference between those numerous daily enforcement actions, and the extremely small number of federal enforcement actions is the use of federal resources, and thus possible federal, rather than state, prosecution.  This raises the question:  what caused an officer to choose one of the 37 to investigate using federal resources, and thus potentially subject to more severe federal penalties, when the officers acted in a race-neutral manner for hundreds of similar arrests?  Plaintiffs claim it must mean that the officers intended the race based result.  But the officers' similar race-neutral acts conduct, and the obvious other possible explanation – that these 37 met the federal criteria on the days in question –suggests a non-race based motivation, and plaintiffs' inference of intent fails.

Defendants agree that plaintiffs can, as plaintiffs argue, prove race discrimination for just one arrest even if the officer has arrested persons of other races.  But that is not what plaintiffs allege here.  They rely solely on the limited results of these 37 investigation rather than case-specific facts to imply racial animus, and thus cannot ignore other, related results.  Plaintiffs cite no cases that suggest that the Court can or should ignore the contrary inference based on the facts alleged by plaintiffs.

## B.      Plaintiffs Reliance on Group Statistics Does Not Support Individual Liability

An officer may be held liable only for his or her own actions and decisions.  Officers cannot be held liable for decisions made by others, even if the officer knew of the discriminatory purpose of the other officers.  *See Ashcroft*, 556 U.S. at 683 (rejecting vicarious liability of supervisors even when supervisors alleged knew of purposeful discrimination by subordinates).  Even assuming that one or more of the officers here acted with racial animus, plaintiffs must still prove personal racial animus by each defendant, and prove that the officers' actions caused plaintiffs' alleged harm.  In other words, even if one or more individual officers made the decisions to investigate drug dealers based on race while using federal resources, the Court cannot infer that all the other individual officer defendants acted based on race.  Yet, that is what plaintiffs argue the Court should do.

Plaintiffs also conclude that the officers must have been aware of the "identities" of other drug dealers investigated using federal resources.  But nothing in the complaint suggest that even if an officer knew the name of a drug dealer, that the officer would necessarily know the suspect's race, or that the individual officers thus acted because of, rather than in spite of, plaintiffs' race.  Plaintiffs do not, and cannot, allege that "publicity" referred to by plaintiffs in their opposition included race information.  It is simply too speculative to conclude that: (1) all 10 individual officer defendants knew the names of the first 14 federally-indicated suspects before they investigated plaintiffs; (2) knew the 14 well enough to know their race; and then (3) intentionally investigated plaintiffs while using federal resources because, as with the other suspects, they are Black.  As the Supreme Court held in *Ashcroft*, a plaintiff does not state an equal protection claim based on an allegation that law enforcement knows in advance that an enforcement policy will impact one protected class more than another, yet choses to proceed.  As most, that is all that plaintiffs assert here.

For seven of the 10 individual defendants, plaintiffs make no other allegation regarding racial animus other than that the officers participated in multiple operations.  But, the Supreme Court has rejected this type of vicarious liability.  A court cannot infer purposeful discrimination by pooling 10 officers' actions together with the multiple, distinct operations, some of which occurred more than a year previously.  Individual liability requires individual allegations.  Plaintiffs must allege and prove that each individual purposefully discriminated.  Attempting to transfer supposed racial bias between

them is insufficient.  Without more, plaintiffs simply have not stated an equal protection claim against each of the individual officers.

Plaintiff wrongly credits the discovery decision in *United States v. Mumphrey*, 193 F.Supp. 3d 1040 (N.D. Cal. 2016), the underlying criminal case, as proof that plaintiffs stated facts sufficient to state a claim of purposeful discrimination by each of the individual defendants.  It does not. *Mumphrey* addressed a request for discovery.  The burden to obtain discovery regarding race-based prosecution in a criminal case is different.  Such a request can be justified by the result, but stating a case against individual officers cannot.  And, neither the individual officers, nor the City, had a role in presenting the arguments on the discovery issue the Court decided in that opinion.  Thus, plaintiffs cannot use the Court's *Mumphrey* decision as a basis for alleging facts to support their claims of purposeful discrimination here.

Plaintiffs also argue that the statistics support a claim of purposeful discrimination. Understandably, statistics arising out of the enforcement actions of one officer may create an inference as to that officer.  *See, e.g., Giron v. City of Alexander*, 2009 WL 2998946 (E.D. Ark. Sept. 11, 2009) (direct evidence of discrimination, and officers own statistics showed racial discrimination); *Belmontes v. Brown*, 414 F.3d 1094, 1127 (9th Cir. 2005), judgment reversed on other grounds *Ayers v. Belmontes*, 549 U.S. 7 (2006) (finding that state wide statistics insufficient to prove discrimination in prosecution, but county-wide statistics may be because reflect the acts of the actual decision maker); *United States v. Bass*, 536 U.S. 862 (2002) (rejecting use of broad statistics to imply discriminatory intent.)  But plaintiffs here improperly rely on statistics arising from the acts of multiple other officers, which do not reflect the decisions of the individual.

Here, the officers investigated plaintiffs because plaintiffs committed drug crimes within 1,000 feet of a school, in a place that the officers could videotape, on a day and at a time that the federal government provided use of their resources.  They did not do so because of plaintiffs' race, and the facts alleged in the complaint do not raise a reasonable inference as to the motivation of each officers. Plaintiffs have therefore failed to state an equal protection claim against each of them.  The Court should dismiss them from the Second Amended Complaint.

**II.**    **Plaintiff's Allegations that Officer Crosby Used Inappropriate Sexual Language and that Officers Scafani and Goff "Mocked and Trivialized" the Black Lives Matter Movement Does Not Raise an Inference that they Caused the Federal Government to Prosecute Plaintiffs Based on Their Race**

Defendants moved to dismiss the claims against Officer Ryan Crosby because plaintiffs' allegations that he used sexual derogatory language does not raise a reasonable inference of race discrimination.  Plaintiffs argue that language suggesting hatred or disrespect toward one group raises an inference that the same person would discriminate against other groups.  Plaintiffs provide no support for this broad view.  Rather, the cases to which plaintiffs cite, *Ramos v. Nielson*, 321 F.Supp.3d 1083 (N.D. Cal. 2018) and *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Security*, 298 F.Supp.3d 1304, 1314 (N.D. Cal. 2018), both addressed whether or not President Trump had animus towards various groups.  It would be difficult to identify a government actor who has expressed more hatred and racism towards a wider swath of the human race than President Trump.  The Courts cited to his many expressions of disdain towards women and towards any non-white people, including non-white Americans.  Understandably, President Trump's despicable conduct towards anyone other than white male citizens supports an inference that he acted with purposeful discrimination in the immigration decisions at issue in those cases.  But here, plaintiffs do not allege that these officers made wide-spread derogatory comments about anyone who was neither male nor white, as did the President.  Plaintiffs cite to no cases that would suggest that a sexually derogatory statement creates a reasonable inference that the speaker harbored animus toward people because of their specific race.

Plaintiffs cite to *Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir. 1994) for the proposition that the Court may reasonably infer race discrimination from an isolated sexually derogatory comments.  That is not what the case states.  In *Lam*, the female Vietnamese plaintiff sued for both race and gender discrimination.  The Court in *Lam* stated that the employer's treatment of Asian males or white females would not necessarily be probative of whether the employer discriminated against a Vietnamese female, because the combination of protected characteristics could not reasonably be separated.  That case did not address plaintiffs' assertion that discrimination against one group can create an inference of discrimination against a different group.

1    Plaintiffs have also asserted that at some unknown time Officers Goff and Scafani "trivialized"

2    the Black Lives movement.  Without more, this vague allegation does not suggest that these officer

3    harbored ill will towards the seven plaintiffs here.  First, this allegation is so vague it cannot be

4    reasonably linked to the officers actions here.  Without more context, it is difficult to infer that

5    whatever comments may have been made reflect any type of racial bias.  Even if it did, surely this one

6    incident fails to support a sufficiently broad inference that these officers investigated any of these

7    seven plaintiffs based on racial animus.

8    Plaintiffs' attempts to state a claim upon such a thin connection fails.

9                                        **CONCLUSION**

10   For the foregoing reasons, the Court should dismiss Officers Ryan Crosby, John Cunnie,

11   Murray Daggs, Britt Elmore, David Goff, Thomas Lee, Kenneth McDonald, Brent Reeder, Anthony

12   Scafani and Daniel Solorzano as defendants in this matter.

13

14

15   Dated:  July 17, 2019

15                                        DENNIS J. HERRERA
16                                        City Attorney
16                                        CHERYL ADAMS
17                                        Chief Trial Deputy
17                                        MARGARET W. BAUMGARTNER
18                                        RENEE E. ROSENBLIT
18                                        Deputy City Attorneys

19

20                                   By: */s/ Margaret W. Baumgartner*
20                                        MARGARET W. BAUMGARTNER

21

22                                        Attorneys for Defendants
22                                        CITY AND COUNTY OF SAN FRANCISCO, et al.

23

24

25

26

27

28